UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMPLE TRADITIONS, INC. and NANCY LINN,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PAYCHEX, INC.,<br><br>　　　　　Defendant. | No. 2:24-cv-01335-TLN-SCR<br><br>**ORDER** |

This matter is before the Court on Defendant Paychex, Inc.'s ("Defendant") Motion to Compel Arbitration. (ECF No. 5.) Plaintiffs Simple Traditions, Inc. ("Simple Traditions") and Nancy Linn ("Linn") (collectively, "Plaintiffs") filed an opposition. (ECF No. 9.) Defendant filed a reply. (ECF No. 11.) For the reasons set forth below, the Court GRANTS Defendant's motion.

///
///
///
///
///
///
///

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises of out Defendant's alleged failure to file employer tax returns and pay payroll taxes for Simple Traditions, a company Linn owns that provides low-cost funeral and cremation services. (ECF No. 1.) Plaintiffs allege that on October 6, 2016, Linn retained Defendant's services to provide payroll services, to prepare and file employer tax returns, and to pay employer taxes for Simple Traditions. (*Id.* at 2.)

In 2018, Simple Traditions changed its corporate status in California from a "C" corporation to an "S" corporation, which resulted in the Internal Revenue Service's ("IRS") issuance of a new Employer Identification Number ("EIN"). (*Id.* at 2–3.) The old "C" corporation ceased to be effective as of January 1, 2019, when the new EIN became effective. (*Id.*) In September 2019, Linn informed Defendant's employee of the change in corporate status, the assignment of a new EIN, and that the new EIN must be used to identify Simple Traditions on all communications with the IRS, including tax returns and employer taxes paid. (*Id.*) On October 4, 2019, Defendant's employee acknowledged the change in corporate status and change of EIN and forwarded several forms for Linn to execute and return, which she did. (*Id.*)

In June 2021, Linn retained the services of an accounting firm to determine whether Simple Traditions was eligible to receive Employee Retention Tax Credits ("ERTC") pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). (*Id.* at 4.) The firm advised Linn she could receive ERTC refunds of $91,712.58, and Linn retained the firm to apply for the tax credits in the eligible quarters — quarters 2, 3, and 4 in tax year 2020 and quarters 2 and 3 in tax year 2021. (*Id.*) When Linn had not received any contact from the IRS about the status of Simple Traditions' ERTC application, she made several phone calls to the IRS and learned in March 2022 that the IRS had no record of Simple Traditions' employer tax returns having been filed or payroll taxes having been paid for tax years 2020 and 2021. (*Id.*)

In March 2023, Linn contacted Defendant's President's office, which responded through a client specialist. (*Id.* at 5.) In April 2023, the client specialist confirmed that not only had Defendant failed to change the EIN in 2019 as Linn instructed, but Defendant misfiled Simple Traditions' employer tax returns for tax years 2019, 2020, 2021, 2022, and the first quarter of

2

2023 by identifying Simple Traditions under the former now defunct EIN. (*Id.*) Plaintiffs allege that as a result of Defendant's admitted errors, the IRS had no record of tax returns for Simple Traditions for the foregoing tax years nor any record of tax payments being made for those years. (*Id.*) Plaintiffs allege the IRS's penalties and interest fines total $76,351.00 and are ongoing. (*Id.*)

On May 9, 2024, Plaintiffs filed the instant action, alleging claims for: breach of contract, negligence, gross negligence, and equitable indemnity. (ECF No. 1.) On June 11, 2024, Defendant filed the instant motion to compel arbitration, arguing Linn signed a Paychex Proprietor Services Agreement (the "Agreement") on behalf of Simple Traditions and the Agreement contains a valid and binding arbitration provision. (ECF No. 5.)

**II.    STANDARD OF LAW**

In deciding whether to compel arbitration, a district court typically determines two gateway issues: (1) whether a valid agreement to arbitrate exists; and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the court is "satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (*Moses H. Cone*), 460 U.S. 1, 24–25 (1983). If a court "determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration." *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015) (citation omitted).

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985). As such, "'any doubts

3

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id.* at 626 (quoting *Moses H. Cone*, 460 U.S. 1 at 24–25). "Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982), *abrogated on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)). Therefore, an arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343–44 (2011) (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Courts may not apply traditional contractual defenses, like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 1748 (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

### III.   ANALYSIS

Defendant generally argues the Court should compel arbitration in Rochester, New York because the Agreement and its arbitration clause are enforceable and Plaintiffs have directly based their claims on the Agreement. (ECF No. 5 at 10–19.) In opposition, Plaintiffs argue: (1) the arbitration provision is unconscionable; and (2) Simple Traditions is not bound by the terms of the Agreement. (ECF No. 9 at 6–11.) The Court will address each of Plaintiff's arguments about whether the Agreement to arbitrate is valid and enforceable and will then discuss whether the Agreement encompasses the dispute at issue. *See Lifescan, Inc.*, 363 F.3d at 1012.

### A.   Whether the Agreement is Unconscionable

"Under California law, courts may refuse to enforce any contract found 'to have been unconscionable at the time it was made,' or may 'limit the application of any unconscionable clause.'" *AT&T Mobility LLC*, 563 U.S. at 340 (citing Cal. Civ. Code § 1670.5(a)). "A finding

4

1    of unconscionability requires a procedural and a substantive element, the former focusing on

2    oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided

3    results." *Id.* (internal quotations omitted) (citing *Armendariz v. Foundation Health Psychcare

4    Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).  California courts apply a "sliding scale" analysis in

5    making determinations about unconscionability: "the more substantively oppressive the contract

6    term, the less evidence of procedural unconscionability is required to come to the conclusion that

7    the term is unenforceable, and vice versa." *Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 963

8    (9th Cir. 2012) (quoting *Armendariz*, 24 Cal. 4th at 89).

9          Plaintiffs argue the Agreement is both procedurally and substantively unconscionable.

10   However, Plaintiffs fail to address these concepts separately and instead blend the discussion

11   together in a way that makes their argument difficult to follow.  Nevertheless, the Court will

12   address each of these concepts in turn.

13                           i.        *Procedural Unconscionability*

14         "Procedural unconscionability focuses on 'oppression or surprise due to unequal

15   bargaining power.'" *Longboy v. Pinnacle Property Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004,

16   1012 (N.D. Cal. 2024) (citing *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021)).

17   Oppression arises "from an inequality of bargaining power [that] results in no real negotiation and

18   an absence of meaningful choice." *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th

19   Cir. 2003) (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997)).  "Surprise

20   involves the extent to which the contract clearly discloses its terms as well as the reasonable

21   expectations of the weaker party." *Lim*, 8 F.4th at 1000 (citing *Chavarria v. Ralphs Grocery Co.*,

22   733 F.3d 916, 922 (9th Cir. 2013)).  The Court will consider oppression and surprise in turn.

23         With respect to oppression, Plaintiffs generally argue the Agreement is procedurally

24   unconscionable because it is a contract of adhesion — it is a standard form contract that was

25   presented to Linn on a "take it or leave it basis" with no opportunity to negotiate terms.  (ECF No.

26   9 at 7.)  Defendant asserts that Plaintiffs' unconscionability arguments are unconvincing as courts

27   have enforced this arbitration clause in the past.  (ECF No. 11 at 6.)

28   ///

A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113. However, "the adhesive aspect of an agreement is not dispositive." *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1470 (2013) (citation omitted). When "there is no other indication of oppression or surprise" and "the degree of procedural unconscionability of an adhesion agreement is low, . . . the agreement will be enforceable unless the degree of substantive unconscionability is high." *Id.*

Plaintiffs largely rely on *Silicon Valley* in support of their unconscionability arguments. (*Id.* at 7–8 (citing *Silicon Valley Self Direct, LLC v. Paychex, Inc.*, No. 5:15-CV-01055-EJD, 2015 WL 4452373, at *7 (N.D. Cal. July 20, 2015).) In *Silicon Valley*, a Northern District of California court considered a similar arbitration agreement[1] and concluded the agreement had an "adhesive nature" — because it was presented on a take it or leave it basis without an opportunity to negotiate terms — and therefore contained "a degree of procedural unconscionability." 2015 WL 4452373, at *6. Ultimately, however, the *Silicon Valley* court only severed a few substantively unconscionable terms, found the agreement was "not permeated with unconscionability," and enforced the arbitration clause. 2015 WL 4452373, at *6–7.

Here, with respect to execution of the Agreement, Plaintiffs contend Linn was not provided with an opportunity to read the contract terms or ask questions regarding their meaning, the execution was "chaotic and hurried," and Defendant's representative filled in the blanks without explanation and directed Linn to sign it. (ECF No. 9 at 7.) Defendant does not rebut any of these contentions in its reply nor does it argue the Agreement was not a contract of adhesion. (*See* ECF No. 11.) The Court has reviewed the Agreement and finds that it is a standard form contract. (ECF No. 1-1.) Accordingly, because it is a standard form contract, was presented on a take it or leave it basis, and relegated Linn "only the opportunity to adhere to the contract or reject

---

[1] It appears the Agreement in the instant case and the agreement in *Silicon Valley* are substantially similar, as both involved the same Defendant, are referred to as the "PPSA," and contain a nearly identical arbitration clause on page 4. *Silicon Valley*, 2015 WL 4452373, at *2; (ECF No. 1-1 at 4).

it,"[2] the Court agrees with Plaintiffs that the Agreement is a contract of adhesion. *Armendariz*, 24 Cal. 4th at 113. Further, the "adhesive nature" of the Agreement "imparts it with a degree of procedural unconscionability." *Silicon Valley*, 2015 WL 4452373, at *6. However, because "the adhesive aspect of an agreement is not dispositive," *Peng*, 219 Cal. App. 4th at 1470, the Court next examines whether there was surprise.

With respect to surprise, the arbitration clause was clearly visible in paragraph 20 of the Agreement, which states in bold text: "Except as provided herein, any dispute arising out of, or in connection with, the Agreement will be determined only by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association." (ECF No. 1-1 at 4.) Linn was also expressly informed on page 1 of the Agreement: "Client warrants that it . . . has read and agrees to the terms and conditions set forth in sections 1-24 of this Agreement." (*Id.* at 1.) This language is indicative of a lack of surprise because the Agreement "clearly disclose[d] its terms as well as the reasonable expectations of" Linn. *Lim*, 8 F.4th at 1000.

Based on the foregoing, it appears there is only minimal evidence of procedural unconscionability. However, the Court must next "examine the extent of the substantive unconscionability to determine, whether based on the California courts' sliding scale approach, the arbitration provision is unconscionable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006).

      ii.  *Substantive Unconscionability*

As stated previously, an agreement is substantively unconscionable if it is "unfairly one-sided." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003).

Plaintiffs' argument on substantive unconscionability lacks clarity, but they seem to argue by analogy to *Silicon Valley* that designation of Rochester, New York as the arbitration venue is

---

[2] Plaintiffs also argue paragraph 23 of the Agreement is procedurally and substantively unconscionable. (ECF No. 9 at 9.) However, Plaintiffs fail to cite to any law, fail to present meaningful analysis, and paragraph 23 is unrelated to the arbitration provision. Therefore, the Court declines to consider this provision.

7

substantively unconscionable.³  (ECF No. 9 at 8–9 8 (citing *Silicon Valley*, 2015 WL 4452373, at *7).)  Defendant asserts other courts have enforced the Agreement in its entirety, including the provision for Rochester, New York.  (ECF No. 11 at 6.)

In *Silicon Valley*, the court found plaintiff met its burden to demonstrate the arbitration clause is substantively unconscionable because plaintiff was headquartered in San Jose, California, was a small business that interacted with defendant entirely within California, and would "incur significant expense and great inconvenience to its business operations and employees if ordered to arbitrate across the country."  2015 WL 4452373, at *7 (internal quotation marks removed).  As will be further explained below, in the instant matter Plaintiffs did not submit sufficient evidence to allow the Court to make a similar finding.

"[F]orum selection clauses are valid and should be given effect unless enforcement of the clause would be unreasonable."  *Nagrampa*, 469 F.3d at 1287 (citations omitted).  Nevertheless, "if the place and manner restrictions of a forum selection provision are unduly oppressive, or have the effect of shielding the stronger party from liability, then the forum selection provision is unconscionable."  *Id.* (internal citations and quotations omitted).  To set aside the forum selection clause, a party may argue: that "the agreement was affected by fraud, undue influence, or overweening bargaining power; that enforcement would be unreasonable and unjust; or that proceedings in the contractual forum will be so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of his day in court."  *Id.*  California also favors enforcement of forum selection clauses on the condition that "they are entered into freely and voluntarily" and "enforcement would not be unreasonable."  *Id.*

In *Nagrampa*, the Ninth Circuit concluded that a forum selection clause was substantively unconscionable, as the effect of requiring arbitration in Boston was so "prohibitively costly" to plaintiff that it had the effect of precluding her from participating.  *Id.* at 1290, 1293.  The court

---

³ Plaintiffs make two further arguments.  First, Plaintiffs appear to argue that the limitations on liability or "damages waiver" provision is substantively unconscionable.  (ECF No. 9 at 5, 8.)  Second, Plaintiffs argue because this case was filed in this district, California law should apply and not New York law.  (*Id.* at 9.)  However, Plaintiffs fail to develop meaningful analysis or cite controlling or persuasive authority.  Accordingly, the Court declines to consider these two arguments.

8

noted the contract would have required "a one-woman franchisee who operates from her home to fly across the country to arbitrate a contract signed and performed in California," and plaintiff would have incurred increased costs for travel and living expenses and for hiring counsel familiar with Massachusetts law. *Id.* To reach this conclusion, the Ninth Circuit examined three bank statements for an account held jointly by plaintiff and her husband and the average monthly deposits and the average monthly withdrawals and debits. *Id.* The court concluded that payment of the initial $6,500 arbitration filing fee alone, without even considering the additional costs to litigate in an out-of-state forum, would result in the bank account being overdrawn by $388.23. *Id.* at 1290 fn. 13.

Here, Plaintiffs contend using Rochester, New York as the arbitration venue would impose a severe financial hardship on Linn and her business to travel out-of-state and participate in a multi-day arbitration, and it may also require the postponement of funeral and cremation services and add emotional stress to Linn and her clients. (ECF No. 9 at 8–9.) While the Court is sympathetic to this argument, Plaintiffs, unlike the plaintiff in *Nagrampa*, did not submit any financial records or provide any estimate of arbitration costs and fees for litigating in an out-of-state forum. The Court therefore does not have an ability to determine whether proceeding in Rochester, New York "will be so gravely difficult and inconvenient" that Plaintiffs will be deprived of their day in court. *Nagrampa*, 469 F.3d at 1287. Further, as Defendants state, courts have enforced the Agreement in its entirety, including the venue provision for Rochester, New York.[4] (ECF No. 11 at 6 (citing *Ruben Limpias v. Sierra Foods, Inc. et al.*, Los Angeles County Superior Court Case No. 19STCV13739; *Smith-Guardadu v. Paychex, Inc.*, Riverside County Superior Court Case No. CVMV2205227; *Claus v. Paychex, Inc.*, No. G045296, 2012 WL

---

[4] The Court notes that Defendant filed a Request for Judicial Notice, citing state court rulings in other cases involving Defendant, for the proposition that courts have enforced the Agreement in its entirety. (ECF No. 11 at 6; *see* ECF Nos. 11-3, 11-4, 11-5, 11-6.) Rule 201(b) provides that the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. The documents at issue here are all court filings or matters of public record. Therefore, judicial notice is appropriate and Defendant's request is GRANTED.

1669425 (Cal. Ct. App. May 14, 2022)).) Accordingly, the Court finds the designation of Rochester, New York as the arbitration venue is not substantively unconscionable.

Based on the foregoing, the Court does not find the Agreement is "permeated with unconscionability." *Silicon Valley*, 2015 WL 4452373, at *7. Accordingly, the "emphatic federal policy in favor of arbitral dispute resolution" is in favor of compelling arbitration in this case. *Mitsubishi Motors Corp.*, 473 U.S. at 631.

B. Whether Simple Traditions Can Be Bound by the Agreement

Plaintiffs argue Simple Traditions is not bound by the Agreement, as Defendant does not offer any evidence that Simple Traditions is a signatory to the Agreement or that it consented, agreed to, or negotiated the terms of the Agreement. (ECF No. 9 at 10.) Plaintiffs also argue that Simple Traditions does not seek the benefits of the Agreement but rather seeks to recover damages and Simple Traditions' claims do not arise out of the Agreement. (*Id.* at 10–11.) Defendant argues the doctrine of estoppel should apply, as Simple Traditions directly benefited from the Agreement. (ECF No. 5 at 16–18; ECF No. 11 at 7–8.)

The Ninth Circuit has made clear that there are a variety of ways that a non-signatory may be bound by an arbitration agreement. Specifically, "non-signatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187–89 (9th Cir. 1986)). Among these principles are the following: (1) incorporation by reference; (2) assumption; (3) agency, (4) veil piercing/alter ego; and (5) estoppel. *Id.*

In the instant matter, the most applicable principle is estoppel. The Ninth Circuit has repeatedly expressed that equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Id.* Specifically, the Ninth Circuit has observed that "non-signatories have been held to arbitration clauses where the non-signatory *knowingly exploits the agreement* containing the arbitration clause despite having never signed the agreement." *Comer*, 436 F.3d at 1101 (internal citations omitted) (emphasis added). Non-signatories are also compelled to arbitrate when "the claims [of the non-signatory are] *intertwined with* the underlying contractual obligations." *Mundi*, 555 F.3d

10

at 1046 (citation omitted) (emphasis added).

Here, by knowingly exploiting the agreement and accepting benefits of the contract, the new Simple Traditions "S" corporation cannot avoid the obligations of that contract. *Comer*, 436 F.3d at 1101. Plaintiffs' actions show an intent to engage in a transaction for services, as Linn retained Defendant "to provide payroll services, to prepare and file employer tax returns and to pay employer taxes for Plaintiff Simple Traditions." (ECF No. 1 at 2.) Simple Traditions did more than just passively benefit from these services. At least from the time Linn first engaged Defendant's services on October 6, 2016, through sometime in 2019, Simple Traditions was receiving the benefits of the Agreement with Defendant — namely, the payroll services, preparation and filing of employer tax returns, and payment of employer taxes. (*Id.* at 2–3.) Although Plaintiffs argue Simple Traditions changed corporate status from a "C" corporation to an "S" corporation and received a new EIN (*id.* at 2–3), it was still the same entity Linn engaged to receive services from Defendant. Linn informed Defendant's employees in September and October 2019 of the change in Simple Tradition's corporate status and assignment of a new EIN, and she submitted several forms to effectuate the change in Defendant's system. (*Id.* at 3.) Defendant's employee acknowledged receipt of those forms on October 14, 2019.[5] (*Id.*) Indeed, Linn believed that Defendant was providing services pursuant to the Agreement for the new "S" corporation until she learned in April 2023 that Defendant had misfiled Simple Traditions' employer tax returns for tax years 2019, 2020, 2021, 2022, and the first quarter of 2023 by identifying Simple Traditions under the former now defunct EIN. (*Id.* at 5.)

Further, Plaintiffs maintain that Simple Traditions' claims are separate from the Agreement, as Simple Traditions seeks "to recover damages inflicted on it as a result of [D]efendant's negligence and gross negligence which occurred *after* it became a different corporate entity on January 1, 2019." (ECF No. 9 at 4 (emphasis in original).) However, Simple Traditions' claims are intertwined with the contract because they rely on and presume the

---

[5] Plaintiffs state the date is October 14, 2018, but the Court believes the "2018" is likely a typo as most of the other dates surrounding this transaction were in 2019. Accordingly, the Court has changed the date to 2019 above.

11

existence of the Agreement's benefits (payroll and employer tax services). In sum, with respect to their negligence and gross negligence claims, Plaintiffs allege Defendant owed them a duty to use reasonable care "in preparing, filing and paying taxes" on behalf of Simple Traditions, Defendant breached the duty of care, Defendant knew the delay in correcting a client's EIN would lead to greater penalties and interest, and Defendant "was grossly negligent in failing to exercise *any* care or so little care in providing services to Linn and Simple Traditions that it acted with indifference and total disregard as to the well[-]being of its client Nancy Linn and Simple Traditions." (ECF No. 1 at 15–17 (emphasis in original).) Because Plaintiffs ultimately seek to recover for Defendant's failure to provide the proper payroll and employer tax services under the proper EIN pursuant to the Agreement through their negligence and gross negligence claims, the claims rely on and presume the existence of the Agreement's benefits.

Defendant is further correct that *International Paper Co.* decision is analogous to the instant case. (ECF No. 5 at 16–17; ECF No. 11 at 8–9 (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000).) In *International Paper Co.*, the Fourth Circuit concluded the doctrine of equitable estoppel barred a buyer from asserting that, as a non-signatory, it was not bound by the arbitration clause in a contract between the manufacturer and distributor. 206 F.3d at 418. Here, the doctrine of equitable estoppel similarly bars Simple Traditions from asserting that, as a non-signatory to the Agreement, it is not bound by the arbitration clause. Like *International Paper Co.*, this "entire case" hinges on the Agreement because Simple Traditions is seeking to enforce the "contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated." 206 F.3d at 418.

Because the Agreement is not "permeated with unconscionability" and Simple Traditions can be bound by the Agreement, the Court finds the Agreement to be valid and enforceable.

    C.  <u>Whether the Agreement Encompasses the Dispute at Issue</u>

As the Court has found that there is an enforceable arbitration agreement, the next question is "whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

///

Plaintiffs allege four claims related to their use of Defendant's services. (*See* ECF No. 1.) These claims include: (1) breach of contract as asserted by Linn; (2) negligence as asserted by Linn and Simple Traditions; (3) gross negligence as asserted by Linn and Simple Traditions; and (4) equitable indemnity as asserted by Linn and Simple Traditions.[6] (*Id.*) As stated previously, Plaintiffs' negligence and gross negligence claims are inextricably intertwined with the Agreement. With respect to the breach of contract claim, Plaintiffs do not dispute that Linn seeks to enforce the requirements of the Agreement and allege Defendant breached the Agreement to provide taxpayer services by failing to change the EIN on the tax returns prepared and filed in 2019, 2020, 2021, 2022, and the first two quarters of 2023. (ECF No. 1 at 13; *see also* ECF No. 9.) With respect to the equitable indemnity claim, Plaintiffs allege they have been damaged by Defendant's breach of contract, gross negligence, and their failure to file Simple Traditions' tax returns and to timely pay taxes for tax years 2019, 2020, 2021, 2022, and the first two quarters of 2023. (ECF No. 1 at 18.) Plaintiffs also allege they "seek equitable indemnity for such penalties and interest assessed by the [IRS] which are the direct consequence of Defendant's breach of the [Agreement], negligence, and gross negligence." (*Id.*) Based on these allegations, the Court finds the Agreement "encompasses" all of Plaintiffs' claims. *See Chiron Corp.*, 207 F.3d at 1130.

Defendant has established that a valid agreement exists, which includes a valid and enforceable arbitration clause, and that the Agreement encompasses the dispute at issue. Plaintiffs have not met their "heavy burden of proof" to overcome the "emphatic federal policy in favor of arbitral dispute resolution." *See Fisher*, 791 F.2d at 694; *Mitsubishi Motors Corp.*, 473 U.S. at 631. Accordingly, Defendant's motion is GRANTED. As all four of Plaintiffs' claims are subject to arbitration, Plaintiffs' Complaint is dismissed with prejudice. *See Lewis v. UBS Financial Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2001) (finding that, because all of plaintiff's claims were subject to arbitration, dismissal with prejudice was appropriate).

///

---

[6] Plaintiffs also seem to assert a claim for declaratory relief (*see* ECF No. 1 at 9–12), as the breach of contract is listed as their second cause of action. However, the Court construes Plaintiffs' request for declaratory relief not as a claim but rather a prayer for relief (as Plaintiffs have stated in their prayer for relief section) (*id.* at 19).

### IV.  CONCLUSION

Based on the foregoing, the Court GRANTS Defendant's Motion to Compel Arbitration (ECF No. 5) and the instant action is DISMISSED with prejudice.  The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Date: December 2, 2024

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE